IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOSUE DELISER,

                        Plaintiff,                    Civil Action No.
                                                      9:13-CV-0803 (GTS/DEP)

        v.

J. MILLER,

                        Defendant.

_____

APPEARANCES:                                      OF COUNSEL:

FOR PLAINTIFF:

JOSUE DELISER, *Pro Se*
09-A-3970
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN                MELISSA A. LATINO, ESQ.
New York State Attorney General          Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

# REPORT, RECOMENDATION AND ORDER

*Pro se* plaintiff Josue Deliser, a New York State prison inmate, commenced this action pursuant to 42 U.S.C. § 1983 against three corrections employees stationed at the prison facility in which he was confined at the relevant times claiming deprivation of his civil rights. Plaintiff's cause of action centers upon an alleged due process violation by Corrections Lieutenant J. Miller, the sole remaining defendant, during a prison disciplinary hearing, over which he presided, resulting in plaintiff serving eleven months in special confinement and a recommendation that he lose a portion of his good-time credits.  Plaintiff alleges that he suffered mental anguish as a result of defendant Miller's conduct at the disciplinary hearing.

In response to plaintiff's complaint, defendant now moves for its dismissal based on his contention that plaintiff has failed to state a claim upon which relief can be granted.  For the reasons set forth below, I recommend that defendant's motion be granted absent plaintiff's agreement to waive any and all claims challenging the duration of his confinement, which may have been affected by the sentence imposed at the disciplinary hearing.

## I.    BACKGROUND[1]

Plaintiff is a New York State prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 at 1.  While he is now incarcerated at the Upstate Correctional Facility, at the times relevant to his claims in this action he was confined in the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York.  *Id.* at 1, 8.

According to his complaint, on March 12, 2011, as plaintiff was exiting the mess hall, he was attacked by two inmates, one of whom wielded a sharpened toothbrush as a weapon.  Dkt. No. 1 at 5.  Plaintiff alleges that Corrections Officer Eric Nolette, who has been dismissed as a defendant from this action, filed a false misbehavior report against plaintiff, in which he stated it was the plaintiff who possessed the weapon during the incident.  *Id.* at 5, 12.  The misbehavior report accused plaintiff of violating several facility rules, including possessing a contraband weapon, committing a movement violation, fighting, creating a disturbance, engaging in violent conduct, and possessing an altered item.  *Id.* at 12.

---

[1]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

A Tier III superintendent's hearing was conducted on March 18, 2011, by defendant J. Miller to address the charges filed in the misbehavior report authored by Nolette.[2] Dkt. No. 1 at 2, 5-6, 8, 10. Plaintiff alleges that defendant Miller refused to allow him to call any witnesses at the hearing, and told plaintiff "not to try and fight the ticket because [he] wasn't going to win regard[less] of what [he] said." *Id.* at 2, 5-6, 8-9. Plaintiff was found guilty of the disciplinary charges and was sentenced to a period of twelve months confinement in the facility special housing unit ("SHU") and a corresponding loss of packages and commissary privileges.[3] *Id.* at 5, 8, 10. Defendant Miller also recommended that plaintiff forfeit three months of good-time credits. *Id.* at 8.

Following the disciplinary hearing, plaintiff was indicted by a Clinton County grand jury and charged with one count of criminal possession of a weapon in the third degree and one count of promoting prison contraband

---

[2]     The DOCCS conducts three types of inmate disciplinary hearings.  See 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d 655 n.1.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.*  Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

[3]     Although plaintiff was sentenced to twelve months of SHU confinement, he only served eleven months of that sentence. Dkt. No. 1 at 5-6, 8.

in the first degree.  Dkt. No. 1 at 13-14.  Those charges stemmed from the same incident that led to his prison disciplinary convictions and issuance of sanctions at Clinton.  *Id.*  Plaintiff was acquitted of the criminal charges by a jury in Clinton County Court on March 4, 2013.  *Id.* at 6.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on June 4, 2013, in the Western District of New York by the filing of a complaint and an accompanying application to proceed *in forma pauperis* ("IFP").  Dkt. Nos. 1, 2.  On July 9, 2013, District Judge Richard J. Arcara ordered that the action be transferred to this district.  Dkt. Nos. 6, 7.  In his complaint, plaintiff asserts a false misbehavior report claim against Corrections Officer Nolette and a due process cause of action against Corrections Lieutenant J. Miller.  Dkt. No. 1 at 2.  The caption of plaintiff's complaint also named Ronald G. Wood as an additional defendant.  *Id.* at 1.  As relief, plaintiff requests an award of $500,000 in damages.

Following an initial review of plaintiff's complaint and IFP application, District Judge Glenn T. Suddaby issued a decision on September 12, 2013, granting plaintiff leave to proceed IFP and approving the filing of his complaint, but directing dismissal of plaintiff's claim against defendant Nolette with prejudice and all claims against defendants Nolette and Wood

from the action without prejudice.  Dkt. No. 8 at 9-10.  Plaintiff's only remaining claim is an alleged Fourteenth Amendment due process violation by defendant Miller arising from the disciplinary hearing conducted in March 2011.  *Id.*

In response to plaintiff's complaint, defendant Miller filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 14.  In support, defendant contends that (1) plaintiff's due process claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) plaintiff is not entitled to damages in accordance with 42 U.S.C. § 1997e(e); and (3) he is entitled to a protective order precluding the plaintiff from engaging in discovery pending the resolution of his motion.  *See generally* Dkt. No. 14-1.  On December 4, 2013, the court received a letter from plaintiff indicating he would not be filing a response in opposition to the pending motion to dismiss.  Dkt. No. 16 at 1.

Defendant's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

6

III.   <u>DISCUSSION</u>

   A.   <u>Legal Standard Governing Motions to Dismiss Pursuant to
        Rule 12(b)(6)</u>[4]

   A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading using a standard which, though

unexacting in its requirements, "demands more than an unadorned, the-

defendant-unlawfully-harmed me accusation" in order to withstand

scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.

v. Twombly*, 550 U.S. 554, 555 (2007)).   Under Rule 8(a)(2) of the Federal

Rules of Civil Procedure, "a pleading must contain a 'short and plain

statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*,

556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its

requirements, that rule commands that a complaint contain more than

mere legal conclusions. *See id.* at 679 ("While legal conclusions can

---

[4]      The court notes that, in his memorandum of law in support of his motion,
defendant Miller has cited an outdated legal standard governing motions to dismiss
pursuant to Rule 12(b)(6). <u>Dkt. No. 14-1 at 4</u>.  More specifically, defendant Miller cites
to *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995), which relies on
the standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957).  *See* <u>Dkt. No. 14-1 at 4</u>
(citing *Gant*, 69 F.3d at 673 ("The complaint may be dismissed only where 'it appears
beyond doubt that the plaintiff can prove no set of facts in support of his claim which
would entitle him to relief.'"  *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.
1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))))). The Supreme Court
"retired" the *Conley* standard in 2007.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554,
562-63 (2007) ("*Conley*'s 'no set of facts' language has been questioned, criticized, and
explained away long enough. . . . This famous observation has earned its retirement.").

provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A *pro se* complaint must be read liberally").

B.   The Rule in *Heck v. Humphrey*

Plaintiff's complaint asserts a due process claim arising out of a disciplinary hearing conducted by defendant Miller on March 18, 2011. Dkt. No. 1 at 2, 5-6, 8, 10.  As a result of that hearing, plaintiff was found guilty, and defendant Miller recommended, *inter alia*, that plaintiff lose three-months of good-time credits.  *Id.* at 5, 8, 10.  In support of his motion to dismiss, defendant Miller contends that plaintiff's due process claim is barred by the Supreme Court's decision in *Heck* and its progeny.  Dkt. No.

14-1 at 6-8.

In *Heck*, the Supreme Court held that a state prisoner's claim for damages under 42 U.S.C. § 1983 is precluded if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" absent proof that the inmate has already secured invalidation of that conviction or sentence. *Heck*, 512 U.S. at 487. In 1997, the Supreme Court issued a decision in *Edwards v. Balisok*, 520 U.S. 641 (1997), in essence extending *Heck*, and holding that a claim for damages arising from allegations of a violation of procedural due process in the context of a prison disciplinary hearing is not cognizable under section 1983 where the nature of the due process challenge necessarily implies the invalidity of the disciplinary determination issued and/or punishment imposed, unless the disposition has already been reversed through a state administrative or judicial habeas proceeding. *Balisok*, 520 U.S. at 645.

The Second Circuit has interpreted *Balisok* to differentiate between cases involving challenges to disciplinary penalties that only affect the conditions of an inmate's confinement – including disciplinary segregation, such as keeplock and SHU confinement – and cases resulting in the imposition of sanctions impacting an inmate's good-time credits. *Jenkins v. Haubert*, 179 F.3d 19, 22-23 (2d Cir. 1999). Applying *Balisok*, the Second

Circuit concluded in *Jenkins* that a plaintiff challenging only the conditions of his confinement, where no good-time credits stand to be lost as a result of the disciplinary hearing at issue, need not show, as a threshold matter, that the disciplinary decision and sentence were reversed or invalidated. *Jenkins*, 179 F.3d at 27. Because the plaintiff in *Jenkins* was not attacking the fact or length of his confinement, either directly or indirectly, the court found it unnecessary for him to invalidate the prison hearing officer's judgment against him prior to bringing a section 1983 claim for damages. *Id.*

Addressing more recently the rule announced in *Balisok*, and carried over into the Supreme Court's later decision in *Muhammad v. Close*, 54 U.S. 749 (2004), the Second Circuit has clarified that if, as a prerequisite for maintaining a section 1983 action, a prisoner agrees to abandon any actual or potential challenge aimed at the duration of his incarceration, then success in the action will have no effect on the sanctions relating to the length of time served in prison, and, accordingly, the inmate may proceed with his a due process claim. *Peralta v. Vasquez*, 467 F.3d 98, 105 (2d Cir. 2006), *cert. denied sub nom.*, *Jones v. Peralta*, 551 U.S. 1145 (2007).  Under *Peralta*'s limited exception to the rule in *Balisok*, in order to pursue his section 1983 due process claim in this action, a plaintiff must

abandon – not just now, but for all time – any claims he may have with respect to the duration of his confinement that arise out of the proceeding now challenged. *Peralta*, 467 F.3d at 104.

In this case, plaintiff's due process claim for damages against defendant Miller arises from a prison disciplinary hearing and his contention that his due process rights were violated when defendant Miller (1) refused to permit him to call witnesses on his behalf; (2) had already prepared a written disposition for the hearing prior to commencing the proceeding; and (3) indicated to plaintiff that he would lose regardless of what he said at the hearing. Dkt. No. 1 at 2, 5-6, 8-9. After finding plaintiff guilty of the charges brought against him, defendant Miller issued a sentence that included, *inter alia*, a recommendation that a portion of his good-time credits be revoked. *Id.* at 8, 10.

Unlike the plaintiff in *Jenkins*, plaintiff at least indirectly challenges the length of his confinement because he allegedly lost good-time credits as a result of the disciplinary hearing at issue. *Jenkins*, 179 F.3d at 27. If substantiated, the procedural defects alleged by plaintiff (including the allegation that defendant Miller refused to permit plaintiff to call witnesses on his behalf at the hearing) would "necessarily imply the invalidity of the deprivation of his good-time credit[s]," even though plaintiff does not

explicitly request damages for the loss of those credits. *Balisok*, 520 U.S. at 646.

This conclusion is not affected by the fact that plaintiff was found not-guilty after a jury trial in Clinton County Court of two state criminal charges stemming from the same incident giving rise to the prison disciplinary hearing. While plaintiff's not-guilty verdict in county court may cast some doubt on the validity of the guilty findings rendered by defendant Miller during the prison disciplinary hearing, the issue litigated in county court was whether plaintiff was guilty of the two criminal charges under New York State Penal Law. The jury trial in county court did not address the disciplinary hearing, including either the legitimacy of the disciplinary convictions, or whether plaintiff was afforded adequate due process during the disciplinary hearing. Accordingly, the disposition in county court regarding the criminal charges lodged against plaintiff does not invalidate defendant Miller's findings during the disciplinary hearing for purposes of *Heck*. *See Gray v. Erfe*, No. 13-CV-0039, 2012 WL 7785080, at *1-2 (D. Conn. Mar. 21, 2012) ("Although the plaintiff alleges that he was found not guilty of the [state] criminal charges, he does not indicate that the prison disciplinary finding has been overturned."); *Black v. Coughlin*, 76 F.3d 72, 73, 75 (2d Cir. 1996) (holding that the plaintiff

"succeeded in having the disciplinary ruling reversed by the state court" to overcome *Heck*'s requirement because he filed an Article 78 petition in state court for the purpose of challenging the procedural defects of his prison disciplinary hearing).[5]

Although plaintiff's due process claim in this case, which challenges both the conditions of confinement (based on the disciplinary sanction of SHU confinement) and the duration of his confinement (based on the recommendation that he lose three months of good-time credits), is subject to the rule in *Heck*, plaintiff may be permitted to pursue that claim if he submits a *Peralta* waiver. Such a waiver would constitute plaintiff's abandonment, for all time, of any claims he may have with respect to the duration of his confinement that arise out of the disciplinary hearing he challenges in his complaint. *Peralta*, 467 F.3d at 104. Accordingly, I recommend that the court grant defendant's motion to dismiss plaintiff's due process claim unless, within thirty days of any order adopting this recommendation, plaintiff notifies the court and defendant's counsel, in writing, of his decision to forever abandon any claims he may have with respect to the duration of his confinement relating to the disciplinary

---

[5]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

proceeding now challenged.

C.    42 U.S.C. § 1997e(e)

Plaintiff seeks damages in the amount of $500,000 for "mental anguish" suffered as a result of defendant Miller's alleged conduct related to the disciplinary hearing on March 18, 2011.  Dkt. No. 1 at 6, 7. Defendant Miller contends that, because plaintiff's complaint fails to allege any physical injury as required by the 42 U.S.C. § 1997e(e), he is precluded from being awarded monetary damages.[6]  Dkt. No. 14-1 at 9.

Pursuant to 42 U.S.C. § 1997e, "[n]o Federal civil action may be brought by a prisoner confined in a . . . correctional facility[] for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e). The Second Circuit has held that section 1997e(e) applies to all federal civil actions, including those pursuant to section 1983.  *Thompson v. Carter*, 284 F.3d 411, 417-18 (2d

---

[6]    Defendant Miller also contends that plaintiff cannot recover damages to the extent he seeks recovery for mental anguish caused by the Clinton County grand jury indictment.  Dkt. No. 14-1 at 8-9.  Although the court agrees that plaintiff's complaint does not allege sufficient facts plausibly suggesting a causal connection between defendant Miller's alleged conduct in the disciplinary proceeding and the grand jury indictment, I have construed plaintiff's complaint to request damages against defendant Miller for his role in the prison disciplinary hearing.  For example, defendant allegedly stated to plaintiff "that no matter what he said or who he wanted to call as witnesses, that plaintiff was not going to win at this hearing."  Dkt. No. 1 at 6.  Plaintiff also alleges he suffered mental anguish from spending eleven months in SHU, a direct consequence of the disciplinary hearing in which defendant Miller played a significant role.  *Id.* at 2, 6.  These two allegations suggest that defendant Miller contributed to plaintiff's mental anguish through his conduct at the disciplinary hearing.

Cir. 2002).  Section 1997e(e), however, does not preclude a prisoner from recovering nominal or punitive damages or seeking declaratory or injunction relief without alleging physical injury. *Thompson*, 284 F.3d at 417-18.

Here, plaintiff seeks damages in the amount of $500,000.  Dkt. No. 1 at 7.  His complaint, however, fails to allege facts plausibly suggesting that he suffered a physical injury, nor does it identify the type of damages he seeks.  *See generally id.*  Accordingly, pursuant to section 1997e(e), plaintiff's claim for emotional distress is subject to dismissal to the extent that he seeks compensatory damages.  *Thompson*, 284 F.3d at 416; *see also Franklin v. Canty*, No. 13-CV-3973, 2014 WL 2217003, at *3 (S.D.N.Y. May 27, 2014) ("Accordingly, because the only relief plaintiff seeks is damages for mental or emotional injury, and the amended complaint does not allege physical injury, the amended complaint must be dismissed."); *Paulino v. Fischer*, 12-CV-0076, 2013 WL 5230264, at *7 (N.D.N.Y. Sept. 16, 2013) (McAvoy, J., *adopting report and recommendation by* Dancks, M.J.) (finding that the plaintiff was not entitled to compensatory damages because his complaint failed to allege physical injury); *Hutt v. Hofman*, No. 08-CV-0202, 2009 WL 2601927, at *8 (D. Vt. Aug. 18, 2009) (holding that the plaintiff's sole due process claim, which

"by its nature, does not inflict physical injury," is not sufficient to permit him to seek compensatory damages). Because plaintiff may be entitled to other relief absent physical injury, however, I recommend defendant Miller's motion to dismiss be granted, in part, as to plaintiff's claim for compensatory damages, but otherwise denied.

D.    <u>Stay of Discovery</u>

Defendant Miller also requests an order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery, pending the resolution of his motion to dismiss. Rule 26(c)(1) provides, in relevant part, that

> [a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>      (A)    forbidding the disclosure or discovery.

Fed. R. Civ. P. 26(c)(1). When exercising the discretion conferred under Rule 26(c) in response to a motion to stay discovery during the pendency of a dismissal motion, a court must determine whether the party seeking the stay has established the existence of "good cause" for the requested delay. *See Chesney v. Valley Stream Union Free Sch. Dist.*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006); *Spencer Trask Software & Info. Svcs., LLC v.*

*RPost Int'l. Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y.2002). The mere filing of a dismissal motion, without more, does not guarantee entitlement to such a stay. *Spencer Trask Software Info. Servs., LLC*, 206 F.R.D. at 368; *Moran v. Flaherty*, No. 92-CV-3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992) ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed.").

Among the factors informing the analysis of whether to grant a stay of discovery in the face of a dispositive motion are the burden of responding to the contemplated discovery and the strength of the dispositive motion forming the basis for the stay request. *Chesney*, 236 F.R.D. at 115; *Spencer Trask Software & Info. Servs., LLC*, 206 F.R.D. at 368. The court must also consider any unfair prejudice that may be suffered by the party seeking to engage in discovery during the pendency of the dismissal motion. *Chesney*, 236 F.R.D. at 115.

Good cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay. *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94-CV-2120, 1996 WL 101277, at *2 (S.D.N.Y. March 7, 1996) (collecting cases).

In this case, having considered the risk of prejudice to the parties

and the strength of the dispositive motion, I conclude that defendant Miller's request for a stay of discovery should be granted pending action on this report by the presiding district judge, plaintiff's submission of a timely *Peralta* waiver, and the issuance of a Rule 16 scheduling order. Once the assigned district judge enters an order with respect to the pending motion to dismiss, the issues in the case will be framed and the court will issue its customary Rule 16 scheduling order, which requires, at the outset, the parties exchange certain mandatory disclosure before discovery can proceed. There is no indication at this time that a limited stay will prejudice plaintiff.

## IV.    SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action asserts a due process claim against defendant Miller resulting from his role in presiding over a prison disciplinary hearing. Because plaintiff was subject to mixed sanctions as a result of the hearing and has failed to demonstrate that those results have been invalidated by another court, his claim is subject to dismissal absent his written agreement to waive any and all claims challenging the duration of his confinement. Accordingly, I recommend that defendant's motion be granted and plaintiff's complaint be dismissed absent the submission of a *Peralta* waiver by plaintiff within thirty days of the date of any order

adopting this recommendation.

Assuming plaintiff submits a timely waiver, I recommend that his claim for compensatory damages be dismissed pursuant to section 1997e(e) because he has failed to allege facts plausibly suggesting that he suffered a physical injury. Additionally, defendant's motion to stay discovery is granted pending action on this report by the presiding district judge, plaintiff's timely submission of a *Peralta* waiver, and the issuance of a Rule 16 scheduling order. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss be GRANTED, unless within thirty days of the date of an order adopting this recommendation, plaintiff notifies the court and defendant's counsel, in writing, of his abandonment, for all time, of any claim associated with the duration of his confinement arising from the disciplinary proceeding conducted by defendant Miller; and it is further

RECOMMENDED that, in the event plaintiff submits a *Peralta* waiver, he be precluded from seeking compensatory damages; and it is further

ORDERED that defendant's motion to stay discovery is GRANTED, and that discovery in the action is temporarily stayed pending action on this report by the presiding district judge, plaintiff's submission of a timely

*Peralta* waiver, and the issuance of a Rule 16 scheduling order.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     July 7, 2014
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge


Not Reported in F.Supp.2d, 2012 WL 7785080 (D.Conn.)
**(Cite as: 2012 WL 7785080 (D.Conn.))**

C
Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Bennie GRAY, Plaintiff,
v.
Scott ERFE, et al., Defendants.

No. 3:13–cv–39(JBA).
March 21, 2012.

Bennie Gray, Enfield, CT, pro se.

*INITIAL REVIEW ORDER*
JANET BOND ARTERTON, District Judge.

**\*1** The plaintiff, Bennie Gray, currently incarcerated at the Enfield Correctional Institution in Enfield, Connecticut, has filed a complaint *pro se* under 42 U.S.C. § 1983 (2000). He names as defendants Warden Scott Erfe, Property Officer Yother and Commissioner Leo Arnone.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[ ]." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly,* 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. But " '[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Boykin v. KeyCorp.,* 521 F.3d 202, 214 (2d Cir.2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)).

The incident underlying the complaint took place at the Corrigan–Radgowski Correctional Institution. On May 9, 2012, the plaintiff was directed to the lieutenant's office in the Radgowski building to discuss a class B disciplinary report. Before entering the office, he was redirected to the Admitting and Processing ("A & P") area and told that an officer in the Corrigan building wanted to speak to him. The plaintiff was told that he was not being transferred and not being sent to segregation.

The plaintiff was strip searched and given an orange jumpsuit. His property was brought to the A & P area and inventoried by Property Officer Packer. The plaintiff was then brought to Corrigan with his property. At Corrigan, the plaintiff spoke to Warden Erfe, and explained why he thought he had been taken to Corrigan. The warden checked into the matter and said that the plaintiff would be transferred back to Radgowski after the inmate count.

Instead, the plaintiff was taken to Administrative Detention. State Troopers charged the plaintiff with possession of narcotics and gave him a court date of May 31, 2012. Later that night, the plaintiff was issued a disciplinary report. The report indicated that, while processing the plaintiff's property for storage, defendant Yother discovered cocaine in a sock. Following a disciplinary hearing, the plaintiff was found guilty and sanctioned with seven days segregation, fifteen days loss of recreation, thirty days loss of commissary and fifteen days lost Risk Reduction Earned Credit ("RREC"). The state charges were dismissed on December 12, 2012. About the same time, defendant Yother was fired for drugs and stealing.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*2** The plaintiff contends that the defendants violated his rights under the Eighth and Fourteenth Amendments. He contends that the defendants maliciously prosecuted him by filing a baseless complaint, failed to intervene to prevent the prosecution, failed to take disciplinary action to prevent the abuse of authority and failed to properly train employees. He also asserts a state law malicious prosecution claim.

Defendants Arnone and Erfe are supervisory officials. In an action filed pursuant to section 1983, liability is imposed only on the official causing a constitutional violation. It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

Because the doctrine of respondeat superior is inapplicable in section 1983 cases, *see Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999), supervisors are not automatically liable under section 1983 when their subordinates commit a constitutional tort. The plaintiff may show supervisory liability by demonstrating one or more of the following criteria: (1) the defendant actually and directly participated in the alleged acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in his supervision of the correctional officers who committed the constitutional violation; and (5) the defendant failed to act in response to information that unconstitutional acts were occurring. *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003). In addition, the plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002).

The plaintiff alleges no facts to support a claim of supervisory liability against defendants Arnone and Erfe. Defendant Arnone is not referenced at all in the statement of facts. The only reference to defendant Erfe is that, after speaking to the plaintiff, defendant Erfe investigated the matter and told the plaintiff that he would return to Radgowski. The plaintiff's conclusory statements are insufficient to state plausible claims against defendants Arnone and Erfe.

As part of his relief, the plaintiff seeks removal of the disciplinary report from his record and restoration of the forfeited RREC. This relief would be available from defendants Arnone and Erfe in their official capacities. The Supreme Court has held that, if a determination favorable to the plaintiff in a section 1983 action "would necessarily imply the invalidity of his conviction or sentence," the plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid before he can recover damages under section 1983. *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994). This same rule applies to challenges to procedures used in prison disciplinary hearings where the inmate has forfeited good time credit as a disciplinary sanction. *See Edwards v. Balisok,* 520 U.S. 641, 644 (1997).

**\*3** Thus, before the plaintiff can seek damages in federal court on these claims he must first invalidate the disciplinary findings. Although the plaintiff alleges that he was found not guilty of the criminal charges, he does not indicate that the prison disciplinary finding has been overturned. Because any invalidation of the disciplinary findings would necessarily restore the fifteen days forfeited RREC, the plaintiff must do so by writ of habeas corpus. *See id.* at 643–44. This claim is dismissed. The plaintiff must seek invalidation of the disciplinary finding and restoration of the RREC in a habeas corpus action filed in state court.

The plaintiff also asserts malicious prosecution

claims against defendant Yother. He states, however, that defendant Yother no longer is employed by the Department of Correction. Thus, the court cannot effect service on defendant Yother at the correctional facility. The plaintiff is responsible for providing a service address for each defendant. Accordingly, the plaintiff is directed to provide a current address for defendant Yother. If no address is filed within thirty days from the date of this order, the complaint will be dismissed.

ORDERS

In accordance with the foregoing analysis, the court enters the following orders:

(1) All federal law claims against defendants Arnone and Erfe including the claim for restoration of RREC and expungement of the disciplinary finding are **DISMISSED** pursuant to 28 U.S.C. § 1915A.

(2) The plaintiff is directed to file a notice containing defendant Yother's current address. The notice shall be filed within **thirty (30)** days from the date of this order **or by April 22, 2013.** Failure to file the order will result in the dismissal of this action without further notice from the court.

**SO ORDERED.**

D.Conn.,2012.
Gray v. Erfe
Not Reported in F.Supp.2d, 2012 WL 7785080 (D.Conn.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2014 WL 2217003 (S.D.N.Y.)
**(Cite as: 2014 WL 2217003 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Ronald Leroy FRANKLIN, Plaintiff,
v.
Warden CANTY, Manhattan Detention Complex,
Deputy Ward Lisa Cooper, Security, Manhattan
Detention Complex, Asst. Deputy Warden Do-
nahue, Unit Manager, Manhattan Detention Com-
plex, Asst. Deputy Warden Nicasio Velazquez,
Unit Manager, Manhattan Detention Complex,
Asst. Deputy Warden Sidney Schwartzbaum, Unit
Manager, Manhattan Detention Complex, and New
York City Department of Corrections, Defendants.

No. 13 CV 3973(VB).
Signed May 27, 2014.

### *MEMORANDUM DECISION*
BRICCETTI, District Judge.

**\*1** *Pro se* plaintiff Ronald Leroy Franklin
brings this Section 1983 action alleging defendants
violated his rights under the Fifth, Eighth, and
Fourteenth Amendments by ordering two lock-
downs of his housing unit in the Manhattan Deten-
tion Complex ("MDC"), a facility operated by the
New York City Department of Correction.

Defendants have moved to dismiss plaintiff's
amended complaint under Rule 12(b)(6).[FN1] (Doc.
# 22). For the following reasons, the motion is
GRANTED. However, plaintiff is granted leave to
file a second amended complaint, as discussed be-
low.

> FN1. By order dated December 9, 2013,
> the Court *sua sponte* dismissed the New
> York City Department of Correction (sued
> herein as the New York City Department
> of Corrections) as a defendant. (Doc. #
> 15). Thus, the motion is made by the five
> remaining defendants.

The Court has subject matter jurisdiction under
28 U.S.C. § 1331.

### BACKGROUND
In deciding the pending motion, the Court ac-
cepts as true all well-pleaded factual allegations in
the amended complaint and draws all reasonable in-
ferences in plaintiff's favor.

On May 31, 2013, at approximately 6:30 p.m.,
a fight broke out in the MDC's "5 North" housing
unit, where plaintiff was being held. Although
MDC ordinarily houses male pre-trial detainees, it
is unclear whether plaintiff was a pre-trial detainee
or a convicted prisoner at the time of the incident.
After the fight was broken up, the housing unit was
locked down until 6:00 a.m. the next morning.

During breakfast the next morning, June 1,
2013, another fight broke out and another lockdown
was ordered. This lockdown lasted until 3:00 p.m.
on June 3, 2013. Plaintiff alleges this lockdown was
requested "to punish the inhabitants of 5 North for
the incidents there. To punish the inmates arbitrar-
ily and without procedural due process." (Am.
Compl. at 3).

Plaintiff also alleges, as a result of the lock-
downs, he was denied a personal visit, access to the
law library, and " 'the minimum standard of weekly
exercise," in violation of the Fifth, Eighth, and
Fourteenth Amendments. (*Id.*). Plaintiff seeks
"$150,000.00 for pain and suffering, mental [ ]
cruelty. And any other relief this Court deems just
and proper." (*Id.* at 5).

In the amended complaint, plaintiff acknow-
ledges he did not file an MDC grievance about the
lockdowns, but maintains the MDC's grievance pro-
cess does not cover his claims.

### DISCUSSION
I. *Legal Standard*
In deciding a Rule 12(b)(6) motion to dismiss,
the Court evaluates the sufficiency of the amended

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

complaint under the "two-pronged approach" announced by the Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662. 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678; *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. at 679.

**\*2** To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." *Id.* at 678; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678 . "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Because plaintiff is proceeding *pro se,* the Court must construe his submissions liberally and interpret them "to raise the strongest arguments that they *suggest." Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (per curiam) (internal quotation marks omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a *pro se* plaintiff alleges civil rights violations. *See Sealed Plaintiff v.. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008). "Even in a *pro se* case, however ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (internal quotation marks omitted). Nor may the Court "invent factual allegations [plaintiff] has not pled." *Id.*

II. *Exhaustion*

"The threshold question in any suit regarding prison conditions is whether the plaintiff has complied with the exhaustion requirement of the" Prison Litigation Reform Act ("PLRA"), which provides: " 'No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.' " *Warren v. Purcell,* 2004 WL 1970642 . at \*4 (S.D.N.Y. Sept. 3, 2004) (quoting 42 U.S.C. § 1997e(a)).[FN2]

> [FN2]. Plaintiff will be provided with copies of all unpublished opinions cited in this decision. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009).

"Dismissal under Rule 12(b)(6) for non-exhaustion is appropriate only if a plaintiffs failure to exhaust is evident on the face of the complaint." *Pratt v. City of New York,* 929 F.Supp.2d 314, 318 (S.D.N.Y.2013).

Here, plaintiff admits he did not file an MDC grievance about the lockdowns, but maintains the MDC's grievance procedure does not cover any of his claims. It is therefore unclear from the face of the complaint plaintiff failed to exhaust his administrative remedies.

Accordingly, the Court declines to dismiss the amended complaint for failure to exhaust.

III. *Physical Injury*

Under the PLRA, " '[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Thus, even if plaintiff states a constitutional claim, the amended complaint must be dismissed if he seeks only damages for mental or emotional injury and does not allege a physical injury. *See Thompson v. Carter,* 284 F.3d 411, 417, 419 (2d Cir.2002).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*3** Plaintiff does not plausibly allege a physical injury. The only allegation in the amended complaint even possibly suggesting physical injury is the allegation the lockdowns deprived plaintiff of "the minimum standard of weekly exercise." (Am. Compl. at 3). Although "[d]eprivation of exercise for an extended period of time" may constitute physical injury, *Williams v. Goord,* 111 F.Supp.2d 280, 291 n. 4 (S.D.N.Y.2000), denial of exercise for three days does not. *See Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1999) (PLRA requires more than *de minimis* physical injury).

The amended complaint also appears to demand only damages for mental or emotional injury. In that regard, the amended complaint states plaintiff seeks $150,000 "for pain and suffering, mental[ ] cruelty. And other relief this Court deems just and proper." (Am. Compl. at 5). Although the Court is mindful of its obligation to construe the amended complaint liberally, *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (per curiam), it would be unreasonable to read "pain and suffering" to mean *physical* pain and suffering given the absence of any plausible allegation of physical injury. *See Chavis v. Chappius,* 618 F.3d at 170 (courts may not "invent factual allegations [plaintiff] has not pled.").

Accordingly, because the only relief plaintiff seeks is damages for mental or emotional injury, and the imposed lockdowns does not allege physical injury, the amended complaint must be dismissed. 42 U.S.C. § 1997e(e); *Thompson v. Carter,* 284 F.3d at 417, 419.

**IV. *Leave to Amend***

The Court will, however, allow plaintiff to amend his complaint. District courts "should not dismiss [*pro se* complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." FN3 *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). A valid Fourteenth Amendment due process claim might be stated here. FN4

FN3. Although plaintiff already amended his complaint once, the purpose of the amendment was to name defendants identified as John Does in plaintiff's original complaint, not to cure deficiencies in plaintiff's substantive claims. (*See* Doc. # 4).

FN4. Plaintiff cannot state a Fifth Amendment due process claim because the Fifth Amendment restrains only the actions of the federal government—not agents of the City of New York such as defendants here. *Henderson v. City of New York,* 818 F.Supp.2d 573, 585 (E.D.N.Y.2011) (citing *Public Utilities Comm'n v. Pollak,* 343 U.S. 451, 461 (1952)). And to the extent plaintiff contends denying him a personal visit, access to the law library, and exercise during the lockdowns amounts to a constitutional violation, the Court disagrees. *See Branham v. Meachum,* 77 F.3d 626, 630–31 (2d Cir.1996); *Williams v. Ramos,* 2013 WL 7017674, at \*4–5 (S.D.N.Y. Dec. 23, 2013).

"It is axiomatic that due process requires that a pretrial detainee not be punished." *Schall v. Martin,* 467 U.S. 253. 269 (1984) (alteration and internal quotation marks omitted). Thus, a pre-trial detainee can establish a due process violation by showing a restraint was imposed with "an expressed intent to punish." *Benjamin v. Fraser,* 264 F.3d 175, 188 (2d Cir.2001).

Here, although it is unclear whether plaintiff was a pre-trial detainee at the time of the lockdowns, plaintiff alleges the second lockdown was requested "to punish the inhabitants of 5 North for the incidents there." (Am. Compl. at 3).

And although the amended complaint does not allege plaintiff sustained a physical injury as a result of the lockdowns, a prisoner need not allege physical injury to obtain nominal or punitive damages—as opposed to damages for mental or emo-

tional injury—under the PLRA. *Thompson v. Carter,* 284 F.3d at 418. A plaintiff is entitled to nominal damages if he can establish a constitutional violation, *Robinson v. Cattaraugus Cnty.,* 147 F.3d 153, 162 (2d Cir.1998), and "[p]unitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent," *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir.1996), such as an intent to punish a pretrial detainee.

**\*4** Accordingly, it cannot be said the amended complaint provides no "indication that a valid claim might be stated." FN5 *Cuoco v. Moritsugu,* 222 F.3d 99, 112.

> FN5. To the extent defendants contend plaintiff cannot state a due process claim because they are entitled to qualified immunity, "[t]he right of pretrial detainees to be free from punitive restraints was clearly established at the time of the events in question, and no reasonable officer could have thought that he could punish a pretrial detainee." *Iqbal v. Hasty,* 490 F.3d 143, 169 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Plaintiff is directed to state in his second amended complaint (i) whether he was a pre-trial detainee (that is, someone who had not yet been convicted of the crime for which he was being held) at the time of the lockdowns; (ii) whether he suffered any physical injury as a result of the lockdowns; and (iii) whether he seeks nominal or punitive damages. If plaintiff alleges a physical injury, he must describe in detail the nature of that injury and how he sustained the injury.

Plaintiff is reminded that any factual allegation in the second amended complaint must be true to the best of his knowledge, information, and belief. *See* Fed.R.Civ.P. 11(b)(3). Because the second amended complaint will completely replace the amended complaint, plaintiff should include in the second amended complaint all information necessary to state a claim against each defendant. Plaintiff is directed to complete the Second Amended Complaint form attached to this Memorandum Decision.

**CONCLUSION**

Defendants' motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. # 22).

Plaintiff is granted leave to file a second amended complaint, which must be filed by June 30,2014.

Defendants' time to move, answer, or otherwise respond to the second amended complaint shall be governed by the Federal Rules of Civil Procedure.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

S.D.N.Y.,2014.
Franklin v. Canty
Slip Copy, 2014 WL 2217003 (S.D.N.Y.)

END OF DOCUMENT

Slip Copy, 2013 WL 5230264 (N.D.N.Y.)
**(Cite as: 2013 WL 5230264 (N.D.N.Y.))**




Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Ariel PAULINO, Plaintiff,
v.
Brian FISCHER, Capt. Knapp; Investigator Nunez;
Patricia Laconey, Defendants.

No. 9:12–CV–00076 (TJM/TWD).
Sept. 16, 2013.

Ariel Paulino, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for
the State of New York, Laura A. Sprague, Esq., of
Counsel, Albany, NY, for Defendant.

***DECISION and ORDER***
THOMAS J. McAVOY, Senior District Judge.
**I. INTRODUCTION**
    **\*1** This *pro se* action brought pursuant to 42
U.S.C. § 1983 was referred to the Hon. Thérèse
Wiley Dancks, United States Magistrate Judge, for
a Report and Recommendation pursuant to 28 U.S
.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). In
her June 14, 2013 Report–Recommendation (Dkt.
No. 26), Magistrate Judge Dancks recommends that
Defendants' motion to dismiss (Dkt. No. 22) be
granted in part and denied in part. No objections to
the Report–Recommendation and Order have been
filed, and the time to do so has expired. FN1

>    **FN1.** The Docket indicates that the Re-
>    port–Recommendation and Order was
>    served on Plaintiff at his Bare Hill Correc-
>    tional Facility address but was returned as
>    "undeliverable" with a notation on the en-
>    velope that reads "NOT HERE RETURN
>    TO SENDER, ME 3/1". In the interim
>    between service and return, Plaintiff
>    provided a notice of change of address in-
>    dicating that he had been released from in-

carceration. On July 5, 2013, the Clerk's
Office re-served the Re-
port–Recommendation and Order on
Plaintiff by mailing it to his newly reported
address. No objections have been received
from Plaintiff.

**II. DISCUSSION**
    After examining the record, this Court has de-
termined that the Report–Recommendation and Or-
der is not subject to attack for plain error or mani-
fest injustice.

**III. CONCLUSION**
    Accordingly, the Court **ADOPTS** the Re-
port–Recommendation and Order for the reasons
stated therein. Defendants' Rule 12(b)(6) motion to
dismiss (Dkt. No. 22) is GRANTED in part and
DENIED in part as follows:

    (1) Defendants' motion to dismiss Plaintiff's
claim for money damages against Defendants in
their official capacities on Eleventh Amendment
grounds is GRANTED as to all Defendants, includ-
ing the non-moving Doe Defendants; and

    (2) Defendants' motion to dismiss Plaintiff's
Amended Complaint in its entirety under *Heck v.
Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129
L.Ed.2d 383 (1994) is DENIED ***provided*** Plaintiff
advise the Court in writing, within thirty (30) days
of the date of this Decision and Order, that he
waives for all time all claims in this action relating
to disciplinary sanctions that affected the duration
of his confinement. This waiver will allow Plaintiff
to proceed with his claim challenging the disciplin-
ary sanctions affecting the conditions of his con-
finement. Plaintiff's failure to file the required
waiver statement within thirty (30) days will be
considered as his refusal to waive the duration of
confinement claim, and such failure will result in
dismissal of this action without prejudice without
further order by the Court; and

© 2014 Thomson Reuters. No Claim to Orig. U.S. Gov. Works.

(3) Defendants' motion to dismiss Plaintiff's claim for emotional and mental distress is DENIED.

### IT IS SO ORDERED.

***ORDER AND REPORT–RECOMMENDATION***

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

This *pro se* civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). Plaintiff Ariel Paulino was formerly an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").[FN1] Plaintiff has sued Defendants Brian Fischer ("Fischer"), DOCCS Commissioner; Capt. Knapp ("Knapp"), hearing officer in Plaintiff's disciplinary proceeding at Cape Vincent Correctional Facility ("Cape Vincent"); Investigator Nunez ("Nunez"), of the Inspector Generals Office; and Patricia LaConey ("LaConey"), Superintendent at Cape Vincent.[FN2] (Dkt. No. 10.)

> FN1. The Docket maintained by the Clerk's Office indicates that the NYS DOCCS lookup reflects that Plaintiff was released from incarceration on his maximum expiration date of March 1, 2013. (*See* March 18, 2013 Docket notation.) Plaintiff has failed to provide the Clerk's Office with his current address.

> FN2. Plaintiff has included four John Doe defendants in his Amended Complaint. (See Dkt. No. 10 at 3.) The action was dismissed for failure to state a claim as against John Doe # 1 by Judge McAvoy in his initial review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). (Dkt. No. 12 at 8.) It appears from the Docket maintained by the Clerk's Office in this matter that none of the remaining Doe Defendants

have been identified or served and none are parties to the motion to dismiss now before me.

**\*2** Plaintiff's claims arise out of the issuance of an allegedly false misbehavior report against him for smuggling and possession of drugs, and for the alleged denial of his due process rights in connection with the disciplinary hearing held on the charges. *Id.* Defendants have been sued in both their individual and official capacities. *Id.* at 11. Plaintiff seeks money damages as well as injunctive and declaratory relief. *Id.*

Defendants Fischer, Knapp, Nunez, and LaConey have moved for dismissal of Plaintiff's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[FN3] (Dkt. No. 22.) Plaintiff has opposed the motion. (Dkt. No. 24.) For reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

> FN3. Although not included in their notice of motion, Defendants also seek a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure barring discovery pending the resolution of this matter. (Dkt. No. 22–1 at 9.)

## I. BACKGROUND[FN4]

> FN4. The background facts are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this motion. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (on a Rule 12(b)(6) motion, all factual allegations in the complaint are to be deemed true).

On July 25, 2011, while Plaintiff was confined as an inmate at Cape Vincent, he was visited by a woman he has described as his common law wife. (Dkt. No. 10 at ¶ 3.) During the visit, a corrections sergeant, accompanied by two other officers, approached Plaintiff and his common law wife and in-

structed Plaintiff to sit down at a table. *Id.* at ¶ 4. Plaintiff's common law wife was forcibly seized and escorted out of the visiting area by the corrections sergeant and the other two officers. *Id.* at ¶¶ 4–5. Plaintiff did not see her again during the visit. *Id.* at ¶ 6.

Fifteen or twenty minutes later, the corrections sergeant and two other officers took Plaintiff to the Special Housing Unit ("SHU") where he was required to go to the bathroom in a pail so that his feces could be tested for drugs. *Id.* at ¶ 7. The day after being placed in SHU, Plaintiff was given a drug test which came back negative. *Id.* at ¶ 8. A day or two later, Plaintiff was given a letter indicating that his common law wife had been arrested for marijuana possession. The following day Plaintiff, who until that time had been told nothing about why he had been administratively segregated, was given a misbehavior report charging him with smuggling, possession of drugs, and conspiracy. *Id.* at ¶¶ 9–10. At his disciplinary hearing two days later, Plaintiff was informed that the misbehavior report came from the Inspector Generals Office, and Cape Vincent officials would have to wait until they received the supporting evidence to go forward with his hearing. *Id.* ¶ 11. Plaintiff objected to the delay. *Id.* at 11.

Plaintiff eventually learned that his common law wife had told authorities that the drugs belonged to Plaintiff, and he had asked her to bring them to Cape Vincent. *Id.* at ¶ 7 Plaintiff also learned that the Inspector Generals Office had been routinely taping his phone calls without allowing Plaintiff to see a warrant. *Id.* at ¶ 7 and 11. Plaintiff, who denied the allegations in the misbehavior report, claims that he was not allowed to confront his accusers. *Id.* at ¶ 13. When Plaintiff spoke to his common law wife by telephone, she told him that she had never said he "had knowledge of, paid, solicited, importune (repeated request) of her possession of drugs, nor at any time did she request him to take drugs from her." *Id.* at ¶ 14.

**\*3** Plaintiff claims to have had no assistant at

his disciplinary hearing and to have been unable to utilize a compulsory process to obtain witnesses because he was in SITU. *Id.* at ¶ 15. Plaintiff was not allowed to cross-examine the informant who had implicated Plaintiff and his common law wife. Nor was Plaintiff allowed to fully cross-examine his common law wife, who testified that Corrections had tried to threaten, coerce, and intimidate her to implicate Plaintiff as soliciting her to smuggle narcotics. *Id* . at 9. In addition, Plaintiff did not get all of the witnesses he wanted or a videotape of the visiting area. *Id.*

The hearing officer imposed a penalty of eighteen months in SITU on Plaintiff. *Id.* at ¶ 17. The penalty was reduced to twelve months on appeal. *Id.*

## II. PROCEDURAL HISTORY

Plaintiff commenced this action in January of 2012 against Defendants Fischer; Deputy Commissioner of DOCCS; Knapp; John Doe # 1, later identified and replaced in the caption by LaConey (*see* Dkt. No. 12 at 9); Sgt. John Doe # 2; John Doe # 3; and Nunez. (Dkt. No. 1.) In a May 14, 2012, Decision and Order, Judge McAvoy granted Plaintiff's request to proceed *in forma pauperis.* (Dkt. No. 7 at 2.)

Upon initial review of Plaintiff's original Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Judge McAvoy found that Plaintiff's Complaint, liberally construed, could be found to assert the following claims: (1) deliberate indifference to the wrongdoing of DOCCS employees by Fischer and the Deputy Commissioner of DOCCS; (2) issuance of a disciplinary ticket by John Doe # 3, which John Doe # 3, Nunez, John Doe # 2, and LaConey all knew or should have known was false and not based upon sufficient evidence; (3) denial of due process and equal protection because the misbehavior report was not signed under penalty of perjury, and at the disciplinary hearing witnesses were not required to testify under penalty of perjury; (4) denial of due process and equal protection because Plaintiff's common law wife was intimidated into

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

implicating him for her marijuana possession and was later harassed while testifying at Plaintiff's disciplinary hearing; (5) recording of Plaintiff's phone calls without a warrant; (6) failure by Defendants to conduct an adequate investigation into the charges against Plaintiff; (7) conspiracy by Defendants to bring false charges against Plaintiff by threatening her to either testify against Plaintiff or face her own criminal charges; (8) failure by LaConey to intervene to correct the wrongdoing of her employees; and (9) denial of Plaintiff's due process rights at his disciplinary hearing by Knapp. *Id.* at 4–5.

Judge McAvoy dismissed the following claims with prejudice: (1) claims against John Doe # 3, Nunez, John Doe # 2, and LaConey related to the alleged falsity of the unsworn misbehavior report, *id.* at 10; and (2) claim that the charges against Plaintiff were not adequately investigated. *Id.* at 17. The district court dismissed all of Plaintiff's remaining claims without prejudice and ordered that the action be dismissed unless Plaintiff filed an amended complaint within thirty days. *Id.* at 17, 20. Plaintiff thereafter filed his Amended Complaint naming Fischer, Knapp, Nunez, LaConey and John Doe # 2, John Doe # 3, and John Doe # 4 as defendants. (Dkt. No. 10.)

## III. ANALYSIS

### A. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

**\*4** A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b) (6). Fed.R.Civ.P. 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accep-

ted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule 8(a) (2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly* ). Furthermore,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

"[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (considering factual allegations in plaintiff's opposition papers) (internal quotations and citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004).

**\*5** Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco,* 222 F.3d at 112 (citation omitted).

## B. Plaintiff's Official Capacity Claims For Money Damages Against Defendants

Plaintiff has sued Defendants under § 1983 in both their individual and official capacities. (Dkt. No. 10.) Defendants seek dismissal of Plaintiff's official capacity claims for money damages against them on Eleventh Amendment grounds. (Dkt. No. 22–1 at 6–7.) The Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state, *Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006), and bars all money damage claims against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (an inmate

plaintiff's claims for damages against individual Department of Correctional Services employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity). Therefore, the Court recommends that the Plaintiff's § 1983 claim for money damages brought against Defendants, including the nonmovant Doe Defendants, in their official capacities, be dismissed with prejudice on Eleventh Amendment grounds.[FN5]

> FN5. The District Court is empowered to dismiss the official capacity claims against the nonmovant Doe Defendants *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B). *See, e.g., Savatxath v. City of Binghamton,* No. 3:12–CV–1492 (TJM/DEP), 2013 WL 603635, at *3, 2013 U.S. Dist. LEXIS 21710, at *7 (N.D.N.Y. Jan.24, 2013) (*sua sponte* dismissal on Eleventh Amendment grounds of claim for money damages against Doe defendants in their official capacities pursuant to 28 U.S.C.1915(e)(2)(B)).

## C. Defendants' Argument for Dismissal Under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)

Defendants seek dismissal of Plaintiff's Amended Complaint under the "favorable termination" requirement set forth in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that a § 1983 action seeking money damages is not cognizable if a finding in favor of the plaintiff would necessarily invalidate a criminal conviction unless the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus ...." *Id.* at 487 (internal citations omitted). "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

**\*6** The rule announced in *Heck* applies whenever a prisoner challenges the fact or length of his conviction or sentence, including being deprived of "good time" credits in a prison disciplinary proceeding, where the deprivation impacts the duration his confinement. *See Edwards v. Balisok,* 520 U.S. 641, 646–648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). *Accord Phelan v. Hersh,* No. 9:10–CV–0011 (GLS)(RFT), 2010 WL 277064, at *3, 2010 U.S. Dist. LEXIS 4252, at *8 (N.D.N.Y. Jan. 20, 2010); *Goston v. Potter,* No. 9:08–CV–478 (FJS/GJD), 2009 WL 1161020, at *4, 2009 U.S. Dist. LEXIS 36012, at *10–11 (N.D.N.Y. April 27, 2009).

It is clear from Plaintiffs' Amended Complaint that he is seeking damages for the penalty of eighteen months in SHU (reduced to twelve months on appeal) imposed by Defendant Knapp after a guilty finding in Plaintiff's disciplinary hearing on the drug related misbehavior report. (Dkt. No. 10 at ¶ 17.) It is far less clear that the penalty imposed by Knapp included a loss of good time. The sole reference in Plaintiff's Amended Complaint to a loss of good time is in his First Cause of Action, where he alleges that the false unsworn misbehavior report, unsubstantiated by the evidence:

caused plaintiff to be subject to 18 months in SHU box. To be held naked for days for contraband search and feces examination, and subject to pain and anguish, emotional distress loss of parole considerations, good time, to defend his self against unjustified disciplinary proceeding.

(Dkt. No. 10 at 9.) Plaintiff has not attached documentation of the penalty imposed by Knapp to his Amended Complaint, nor has he submitted such documentation with his opposition to Defendants' motion. Therefore, I cannot determine whether Plaintiff actually lost good time, or the inclusion of

the reference to lost good time in his Amended Complaint is merely the result of the unfortunate borrowing of language from another *pro se* prisoner's pleading. Because Plaintiff has included a loss of good time allegation in his Amended Complaint, whether intended or not, he must show that the challenged determination of guilt in his disciplinary hearing has been reversed, declared invalid, or otherwise favorably terminated in order to pursue a claim for damages related to the duration of his confinement.[FN6] *Heck,* 512 U.S. at 487. He has not done so.

FN6. Plaintiff was released from prison after he commenced this lawsuit. In *Huang v. Johnson,* 251 F.3d 65, 74–75 (2d Cir.2001), the Second Circuit held that *Heck* did not bar a plaintiff's § 1983 suit where at the time the § 1983 action was commenced, the plaintiff was no longer in custody, thus rendering a habeas corpus remedy unavailable. The Court relied upon Justice Souter's concurrence, joined by three other Justices, in *Spencer v. Kemna,* 523 U.S. 1, 21, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), in which Justice Souter concluded that a former prisoner, no longer in custody and therefore no longer able to satisfy the favorable termination requirement, "may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." District courts in the Second Circuit have found *Huang* inapplicable in cases like this one where the § 1983 action was commenced while the plaintiff was still incarcerated. *See, e.g., Gastelu v. Breslin,* No. 03–CV–1339 JG 2005 WL 2271933, at *4, 2005 U.S. Dist. LEXIS 20341, at *13–14 (E.D.N.Y. Sept. 12, 2005) ("[Plaintiff] was still in prison when he initiated his § 1983 action. Because his challenge would necessarily im-

ply the invalidity of his confinement, he is precluded from bringing an action under § 1983. The fact that he was released while his § 1983 action was pending does not alter the result."); *Rolle v. Connell,* No. 9:05–CV–991 (NAM RFT), 2005 WL 3077474, at *2–3, 2005 U.S. Dist. LEXIS 29549, at *6–8 (N.D.N.Y. Nov.16, 2005) (following *Gastelu* ); *Hamm v. Hatcher,* No. 05–CV–503 (KMK), 2009 WL 1322357, at *8, n. 6, 2009 U.S. Dist. LEXIS 43975, at *28–29, n. 6 (S.D.N.Y. May 5, 2009) (same).

In *Peralta v. Vasquez,* 467 F.3d 98, 104–05 (2d Cir.2006), the Second Circuit ruled that the favorable termination rule in *Heck* is not an absolute bar to a mixed sanctions claim challenging both the duration and conditions of confinement. The Court held in *Peralta* that "a prisoner subject to mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement." Id.* at 104. (emphasis in original). This action presents as a mixed sanctions lawsuit since Plaintiff is challenging both the conditions of his confinement in SHU and the duration of his confinement in his Amended Complaint.

**\*7** In mixed sanction actions, a *pro se* plaintiff should be given the option of waiving any challenge to conditions affecting the duration of his confinement so that he can proceed with his claims with respect to the conditions of his confinement. *See, e.g., Goston,* 2009 WL 1161020, at *4 (in a mixed sanction case the court found it "must present [the *Peralta* ] waiver option to Plaintiff and ascertain whether he is willing to waive, once and for all, all claims affecting the duration of his imprisonment in order to proceed with his claims affecting his conditions of confinement," and direct dismissal of the complaint without prejudice upon

failure to waive); *see also Phelan,* 2010 WL 277064, at *4 (allowing plaintiff thirty days within which to file a waiver of claims affecting the duration of his confinement and directing dismissal of his due process claim without prejudice upon failure to file the waiver).

I therefore recommend that the District Court allow Plaintiff an opportunity to waive all claims affecting the duration of his confinement, and that Plaintiff be advised that his failure to do so will result in dismissal of this action without prejudice.

### D. Plaintiff's Compensatory Damages Claim

Plaintiff seeks compensatory damages in the amount of $10,000,000 for the mental anguish and emotional distress he suffered as a result of being placed naked in an SITU cell where he was forced to go to the bathroom in a pail and being sentenced to eighteen months in SITU. (Dkt. No. 10 at 9 and 11.) Defendants have moved for dismissal of Plaintiff's claim for mental anguish and emotional distress damages because he has not alleged any physical injury as required under the Prison Litigation Reform Act of 1997, 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined to jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

In the absence of allegations of physical injury, Plaintiff's claim for emotional and mental distress is subject to dismissal without prejudice under § 1997e(e) insofar as he seeks compensatory damages. However, § 1997e(e) does not preclude a prisoner from recovering nominal or punitive damages or seeking declaratory and injunctive relief without alleging physical injury. *See Thompson v. Carter,* 284 F.3d 411, 416–18 (2d Cir.2012) ( § 1997e(e) does not prevent a prisoner from obtaining injunctive and declaratory relief or recovering nominal and punitive damages). Plaintiff's prayer for relief is limited to injunctive and declaratory relief and monetary damages. (Dkt. No. 10 at 11.) Plaintiff has not specifically requested punitive damages.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

At the time Defendants filed their motion to dismiss on January 29, 2013, Plaintiff was still incarcerated. Plaintiff's release from incarceration renders his claims for injunctive and declaratory relief moot. *See Hallett v. New York State Dept. of Corr. Servs.,* 109 F.Supp.2d 190, 196 (S.D.N.Y.2000) ("Because [plaintiff] is no longer incarcerated and under the supervision of any of the named defendants, his requests for injunctive relief are dismissed as moot."); *Salahuddin v. Coughlin,* 591 F.Supp. 353, 362 (S.D.N.Y.1984) (claims for injunctive and declaratory relief are moot where plaintiff has been released on parole). However, because Plaintiff will be entitled to nominal damages if he ultimately prevails on his claim of emotional and mental distress, even if he is unable to establish physical injury, I recommend that Defendants' motion to dismiss under 42 U.S.C. § 1997e(e) be denied.

**\*8 ACCORDINGLY,** it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 22) be **GRANTED** in part and **DENIED** in part as follows:

(1) Defendants' motion to dismiss Plaintiff's Amended Complaint in its entirety under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) be **DENIED;**

(2) Defendants' motion to dismiss Plaintiff's claim for money damages against Defendants in their official capacities on Eleventh Amendment grounds be **GRANTED** as to all Defendants, including the nonmovant Doe Defendants; and

(3) Defendants' motion to dismiss Plaintiff's claim for emotional and mental distress be **DENIED;** and it is further

**RECOMMENDED** that Plaintiff be directed to advise the District Court in writing, within thirty days of the filing date of the Court's order, whether he waives for all times all claims in this action re-

lating to disciplinary sanctions affecting the duration of his confinement in order to proceed with his claim challenging the sanctions affecting the conditions of his confinement; and that the Court specifically advise Plaintiff that the Court will deem his failure to file the required waiver statement within the required time to constitute his refusal to waive the claim, and that such failure will result in dismissal of this action without prejudice without further order of the Court; and it is further

**RECOMMENDED** that the Clerk be directed to return the file to the District Court for further review upon Plaintiff's full compliance with the Court's order, or, if at the expiration of thirty days Plaintiff has not complied with the terms of the Court's order; and it is hereby

**ORDERED,** that Defendants' request for a stay of discovery pending determination of their motion to dismiss is **DENIED;** and it is further

**ORDERED,** that the Clerk provide Plaintiff with copies of all of the unpublished decisions cited herein.[FN*]

[FN*] Editor's Note: Attachments of Westlaw case copies deleted for online display.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

N.D.N.Y.,2013.
Paulino v. Fischer
Slip Copy, 2013 WL 5230264 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2601927 (D.Vt.)
**(Cite as: 2009 WL 2601927 (D.Vt.))**



Only the Westlaw citation is currently available.

United States District Court,
D. Vermont.
Robert HUTT, Plaintiff,
v.
Robert HOFMAN, Paul Brosseau, James Seavey,
Joshua Rutherford, Stanley Wood, Jeffrey
Schmeltz, Brian Kerns, Scott Isenor, Geoffrey C.
Fronberg, Kevin Ashburn, Ellen McWard, Defend-
ants.

No. 2:08 CV 202.
Aug. 18, 2009.

Robert Hutt, Beattyville, KY, pro se.

David R. Mclean, Esq., Vermont Office of the At-
torney General, Waterbury, VT, for Defendant.

*ORDER*
WILLIAM K. SESSIONS, III, Chief Judge.

**\*1** The Report and Recommendation of the
United States Magistrate Judge was filed July 30,
2009. After careful review of the file and the Ma-
gistrate Judge's Report and Recommendation, no
objections having been filed by any party, this
Court ADOPTS the Magistrate Judge's recommend-
ations in full for the reasons stated in the Report.

The defendants' motion to dismiss (Paper 16) is
GRANTED in part and DENIED in part. All claims
brought against the defendants in their official ca-
pacities are DISMISSED with prejudice. Hutt's
claims for declaratory judgment are DISMISSED
without prejudice as moot. Claims brought against
defendants Hofmann and Ashburn in their individu-
al capacities, Hutt's Eighth Amendment claim, and
all claims for compensatory damages are DIS-
MISSED without prejudice as well, subject to re-
pleading within 30 days of the date of this Order.
Failure to file a timely amended complaint will res-
ult in the dismissal of those claims with prejudice.

*MAGISTRATE JUDGE'S REPORT AND RECOM-
MENDATION*
Plaintiff Robert Hutt, a Vermont inmate pro-
ceeding *pro se,* brings this action alleging that pris-
on officials placed him in segregation in violation
of his constitutional rights. The defendants have
filed a joint motion to dismiss, arguing that Hutt's
claims against them in their official capacities are
barred by the Eleventh Amendment, that not all de-
fendants were involved in the alleged wrongdoing,
and that Hutt has failed to state a valid constitution-
al claim. For the reasons set forth below, I recom-
mend that the motion to dismiss (Paper 16) be
GRANTED in part and DENIED in part.

*Factual Background*
For the limited purpose of ruling upon the mo-
tion to dismiss, the facts alleged in the complaint
will be accepted as true. Hutt claims that on July 7,
2007, while housed at the Southern State Correc-
tional Facility, he was informed that his cell was to
be searched. As a result of the search, officers
found home-made shanks. Mattresses from the cell
were removed, and another shank was later dis-
covered inside one of the mattresses. Hutt alleges
that the mattress with the shank belonged to his
cell-mate.

In Hutt's mattress, officers discovered syringes.
The complaint contends that the syringes were the
type "used for diabetics" but not the type used by
the facility's medical department. (Paper 26 at 5).
As a result, Hutt was charged with "[p]ossession,
manufacture or introduction of any item that consti-
tutes a danger to the order of the facility." *Id.* The
Inmate Disciplinary Report associated with this of-
fense indicates that Hutt was placed in segregation
on July 7, 2007. (Paper 4–2 at 7).

On August 4, 2007, Hutt received a notice of
administrative segregation and a notice of hearing.
A hearing was held on August 8, 2007, at which se-
gregation was found to be justified. On August 17,
2007, Hutt appealed to the Commissioner of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2601927 (D.Vt.)
**(Cite as: 2009 WL 2601927 (D.Vt.))**

Department of Corrections ("DOC"). On September 5, 2007, the appeal was granted, the disciplinary violation was expunged, and Hutt was ordered to either be released or granted a new administrative hearing. *Id.* at 6.

**\*2** Hutt was again placed in administrative segregation on January 1, 2008 as a result of two convictions for possession of contraband. A hearing was held on January 6, 2008. The hearing officer found cause for segregation, and Hutt again appealed on procedural grounds. On appeal, a department official ordered a new hearing. (Paper 4–2 at 46). Hutt was successful at the second hearing, held on February 27, 2008, and was released from administrative segregation that same day. *Id.* at 68.

Hutt claims that each of his initial hearings violated his due process rights. Specifically, he claims that he was limited as to the number of witnesses he could call; that witness testimony was itself limited; that confidential informants were used improperly; and that the hearing officer in the January 2008 hearing had a vested interest in the outcome.

His complaint sets forth three causes of action. The first charges that limiting witnesses and witness testimony violated his due process rights, and that the prison Superintendent and Assistant Superintendent failed to ensure that the hearings were impartial. The second cause of action alleges that the prison Superintendent and Assistant Superintendent, upon receiving the Commissioner's rulings on his appeals, failed to correct "the problems of the Staff who played an open roll [sic] in violating plaintiff's rights." This cause also brings general claims against those defendants involved in his disciplinary and administrative segregation hearings. Hutt's third cause of action asserts that the defendants deprived him of his freedom by segregating him "for unfounded infractions" in violation of his rights under the Eighth and Fourteenth Amendments. For relief, Hutt requests a declaratory judgment stating that his rights were violated. He is also seeking compensatory and punitive damages.

*Discussion*

I. *Motion to Dismiss Standard*

The defendants have moved to dismiss Hutt's complaint for failure to state a claim. Such a motion, filed pursuant to Fed.R.Civ.P. 12(b)(6), tests the legal rather than the factual sufficiency of a complaint. *See, e.g., Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.' ") (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)). Accordingly, the Court must accept the factual allegations in the complaint as true, *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007), and draw all reasonable inferences in favor of the plaintiff. *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir .1995).

The Supreme Court has held that the standard governing a complaint's legal sufficiency is one of "plausibility." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556–60 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556). The standard does not require a probability of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Additionally, the Court is not required to accept a plaintiff's legal conclusions as true. *Id.* Finally, pleadings drafted by a *pro se* party should be liberally construed. *Fernandez v. Chertoff,* 471 F.3d 45, 51 (2d Cir.2006).

II. *Eleventh Amendment*

**\*3** The defendants first argue that any claims for damages brought against them in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment prohibits suits in federal court brought by citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitu-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2601927 (D.Vt.)
**(Cite as: 2009 WL 2601927 (D.Vt.))**

tional immunity by Congress. *See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 142–47 (1993); *Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 97–100 (1984).* The Eleventh Amendment also bars claims for damages brought against state employees sued in their official capacities. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991); *Pennhurst,* 465 U.S. at 102.

Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that immunity by Congress. In fact, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment. *See* 12 V.S.A. § 5601(g). Accordingly, Hutt's damages claims brought against the defendants in their official capacities should be DISMISSED.

III. *Personal Involvement by Hofmann, Ashburn and McWard*

The defendants next move to dismiss all claims against former DOC Commissioner Robert Hofmann, prison Superintendent Kevin Ashburn and Assistant Superintendent Ellen McWard, arguing that these defendants were not personally involved in any alleged wrongdoing.

The complaint alleges that Commissioner Hofmann had supervisory responsibility for inmate and staff discipline issues, and was charged with ensuring professional conduct by DOC staff. (Paper 4 at 7.) Ashburn is alleged to have had similar responsibilities within his own facility. *Id.* As to McWard, Hutt claims that she "ignored all in-person requests as to the manner of the plaintiff's inmate segregation," and was "duty bound" to review Hutt's procedural claims and confer with Ashburn about his allegations. *Id.*

Hutt does not allege that either Hofmann or Ashburn played any direct role in his segregation placements or related hearings. Although Hutt did file appeals with the Commissioner's office, the complaint states that responses were provided by a Deputy Commissioner. (Paper 4 at 10.) Even assuming Hofmann's direct involvement in such ap-

peals, however, the appeals resulted in victories for Hutt and thus do not provide a basis for liability.

Instead of direct involvement, Hutt claims that Hofmann and Ashburn had more generalized culpability because of their roles as supervisors. The Second Circuit has made clear that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on *respondeat superior.*

'[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior.' Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citing *Al– Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989)). To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations. *See Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995). By the same token, however, mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985); *see also Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).

**\*4** Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez,* 341 F.3d at 145; *see also Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003).

The claims in this case are that Commissioner Hofmann and Superintendent Ashburn had overall responsibility for the conduct of their respective staffs. There is no claim that either defendant was aware of Hutt's due process claims, or that any unconstitutional conduct was the result of a policy or custom created by these defendants. While Hutt does claim that Hofmann and Ashburn had supervisory responsibilities, there is nothing in the complaint suggesting conduct approaching gross negligence. *See Curley v. AMR Corp,* 153 F.3d 5, 13 (2d Cir.1998) (quoting *AT & T Co. v. City of New York,* 83 F.3d 549, 556 (2d Cir.1996) (stating that gross negligence is conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing").

The role of Assistant Superintendent McWard is alleged to have been more direct than that of her superiors. Specifically, the complaint states that she received "in-person requests" to review Hutt's segregation as "the hearing held was in violation of the plaintiff's due process rights of law." (Paper 26 at 3). Reading the complaint liberally, Hutt appears to argue that if McWard had responded to his "in-person requests" and reviewed the procedures used in his initial hearing, his first appeal to the Commissioner would have been unnecessary, his second hearing would not have been procedurally deficient, and his time spent in administrative segregation would have been significantly shorter. In sum, Hutt claims that McWard had a duty as a supervisor to "remedy the wrong" in order to limit the harm and prevent procedural flaws from being repeated. *Hernandez,* 341 F.3d at 145 Consequently, the complaint offers a plausible claim of supervisor liability against McWard, and her motion to dismiss for lack of personal involvement should be DENIED.

As to Ashburn and Hofmann, the complaint does not allege sufficient personal involvement, and all claims against them in their individual capacities

should be DISMISSED.

IV. *Constitutional Claims*

Hutt asserts that his constitutional claims fall within the purview of the Eighth and Fourteenth Amendments. It is not always clear from his filings, however, which allegations underlie these separate claims. For example, in his opposition memorandum Hutt states that he brings his claims "under the premise of Cruel and Unusual punishment in regards to the actions of segregation in the due process that was violated." (Paper 24 at 10). In light of Hutt's *pro se* status, the Court will analyze his claims under both Amendments.

A. Eighth Amendment

**\*5** The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319 (1986). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

In order for Hutt to state a claim under the Eighth Amendment, he must show: (1) that the conditions of his confinement resulted in a deprivation that was sufficiently serious; and (2) that the defendants acted with deliberate indifference to his health or safety. *Farmer,* 511 U.S. at 834; *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

Hutt does not provide any description of his

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

conditions of confinement while in administrative segregation. This Court has previously determined that such segregation permits out-of-cell recreation, access to legal materials, access to medical care, and three meals per day. *Griffith v. Hofmann,* 2008 WL 4682690, at *5 (D.Vt. Oct. 21, 2008). Subjecting prisoners to this form of incarceration does not rise to the level of an Eighth Amendment violation. *See, Smith v. Fischer,* 2009 WL 632890, at *11 (N.D.N .Y. March 9, 2009); *Monroe v. Janes,* 2008 WL 508905 at *7 (N.D.N.Y. Feb. 21, 2008) (finding that although special segregated housing "may implicate other constitutional rights, [it] does not rise to a level of constitutional significance under the Eighth Amendment and ... fails to support a claim of cruel and unusual punishment under that provision.").[FN1] Nor does Hutt allege that the defendants were deliberately indifferent to a substantial risk of harm arising out of his segregation. His Eighth Amendment claim should, therefore, be DISMISSED.

> FN1. The cited cases involved conditions of confinement in special housing units in New York. Such confinement has been described as placement in a cell for 23 hours per day, exercise one hour per day, two showers per week, and limited book and visitor privileges. *Colon v. Howard,* 215 F.3d 227, 230 (2d Cir.2000).

**B. Fourteenth Amendment**

Hutt's Fourteenth Amendment claim is procedural in nature, as he complains that he was not allowed to call all of his desired witnesses and that his witness testimony was limited. He also alleges that confidential informants were used improperly, and that one of the hearing officers had a vested interest in the outcome. As a result of these procedures, he was allegedly segregated based upon "unfounded infractions." (Paper 26 at 6–8).

The defendants note that, despite the alleged deficiencies, Hutt was provided an effective appeal procedure and was successful on both occasions. They further argue that there was no due process vi-

olation because Hutt had no protected liberty interest. Before Hutt can succeed on his due process claim, he must show that he had a liberty interest in not being placed in administrative segregation. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). The existence of a liberty interest will depend, in part, on the severity of the hardship imposed. *See Sandin v. Conner,* 515 U.S. 472, 484 (1995).

**\*6** In *Sandin,* the Supreme Court ruled that the Constitution does not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id* . "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," *id.* at 485, and it is only where the hardships become atypical and significant that due process standards must be met. *See Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997).

"Factors relevant to determining whether the plaintiff endured 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " *Palmer,* 364 F.3d at 64 (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir.1999).

Here, the parties disagree about the number of days Hutt spent in administrative segregation. The defendants contend that "[b]ased on the allegations in the Complaint, [Hutt] was in administrative segregation for approximately fifty-one days ...."

(Paper 16 at 2). In the same motion, they state that Hutt spent "eighty one days in administrative segregation." *Id.* at 9. Hutt responds that he was not released between "at any time from the beginning of the Disciplinary Segregation to the 1st administrative segregation ... and the 2nd time the plaintiff was held in administrative segregation," and that "[t]he correct time of the segregation of the plaintiff is over 120 days ...." (Paper 24 at 4).

The Second Circuit has not established a bright-line rule as to how lengthy a confinement will be considered atypical and significant. *See Philips v. Goord,* 2009 WL 909593, at *8 (W.D.N .Y. Apr. 1, 2009) (citing *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998) (citations omitted)). The Circuit has determined, however, that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quoting *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000)). Accepting Hutt's calculation of his time spent in administrative segregation, *see, e.g., Hernandez v. Goord,* 312 F.Supp.2d 537, 542–43 (S.D.N.Y.2004) (courts consider as true not only facts alleged in complaint, but also those alleged in responsive papers on motion to dismiss), the Court should require such a detailed record.

**\*7** With respect to the conditions of Hutt's segregation, the defendants assert that they were essentially the same as those described in *Griffith.* 2008 WL 4682690, at *5 (describing administrative segregation as "one hour of out-of-cell recreation per day, access to legal materials, access to medical care, and three meals per day."). Hutt has not challenged this assertion. Nor has he provided any facts about his treatment while in administrative segregation. In *Palmer,* however, the Second Circuit clearly stated that district courts must make a "fact-intensive inquiry ... without relying in its familiarity with [restrictive confinement] conditions in previous cases." 364 F.3d at 65.

Additional information about the conditions of administrative segregation in Vermont may be gleaned from the DOC's directive on restrictive housing. *See* Fed.R.Evid. 201(b); *Christman v. Skinner,* 468 F.2d 723, 726 (2d Cir.1972) (proper for trial court to take judicial notice of state prison regulations); *Hosendove v. Myers,* 2003 WL 2216809, at *1 (D.Conn. Sept. 19, 2003) (taking judicial notice of Department of Corrections Administrative Directives). Specifically, DOC Directive No. 410.06 dictates those conditions in considerable detail, ranging from the level of ventilation to laundry service and recreation time.[FN2] While these general conditions may have applied here, the Second Circuit requires an examination of "the actual circumstances of confinement ." *Palmer,* 364 F.3d at 65. Anything less, assuming that Hutt spent over 101 days in segregation, is insufficient. *Id.* at 65–66 ("In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in [segregation] was exceedingly short and there was no indication that the plaintiff endured unusual [segregation] conditions.").

> FN2. The directive contains different restrictions for "Phase I" and "Phase II" administrative segregation. For example, recreation under Phase II is daily, while under the more restrictive Phase I, recreation is required for a minimum of one hour, five days per week. Hutt does not allege the level of confinement applied in his case.

The Court must also scrutinize the fact that Hutt allegedly spent 120 days in administrative segregation. Using New York cases as a guide, approximately four months in administrative segregation would not necessarily violate the Constitution. *See, e.g., Sealey v. Giltner,* 197 F.3d 578, 589–90 (2d Cir.1999) (holding that 101 days spent in conditions that were "somewhat more severe than those of general population" did not impose atypical and significant hardship"); *Husbands v. McLellan,* 990

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

F.Supp. 214, 217–18 (W.D . N.Y.1998) (180 days did not trigger liberty interest); *Warren,* 985 F.Supp. at 354 (161 days); *Trice v. Clark,* 1996 WL 257578, at *3 (S.D.N.Y. May 16, 1996) (150 days). However, it is not clear from this circuit's case law whether using a New York standard is appropriate for a Vermont inmate. *See Sealey,* 197 F.3d at 589 (noting the Seventh Circuit's rule that the appropriate comparison "is with other prisons in the state").

In *Sealey,* the court posed the question of whether courts should compare a plaintiff's claims to "conditions at the inmate's prison, all prisons in the state system, or all prisons in the nation?", then proceeded to acknowledge that "the conditions of administrative confinement in other [prisons within the state] ... might well be relevant to an inmate's liberty claim." *Id.* at 588–89. The court did not condone comparisons with prisons in other states. Assuming that comparison with other states is inappropriate, the record in this case needs to be further developed before the Court may dismiss for lack of a liberty interest.

**\*8** Specifically, the record should include, but not necessarily be limited to, actual comparisons between Hutt's conditions of confinement while in administrative segregation and the conditions for general population; comparisons with other prisoners in administrative and protective confinement; conditions of administrative segregation confinement at other Vermont facilities; and the "frequency and duration of confinements imposing significant hardships." *Id.* at 589; *see also Palmer,* 364 F .3d at 64–67; *Welch v. Bartlett,* 196 F.3d 389, 393 (2d Cir.1999). Because the current record is insufficient, the defendants' motion to dismiss for lack of a protected liberty interest should be DENIED.

### V. *Available Remedies*

The defendants' final argument is that, under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), Hutt cannot collect compensatory damages without alleging a physical injury, and that Hutt alleges no such injury. The defendants

further argue that, although a lack of physical injury does not bar claims for injunctive or declaratory relief, Hutt's transfer to a different prison facility moots any such claims.

### A. PLRA

The PLRA states in relevant part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Second Circuit has held that the statute bars claims for compensatory damages arising out of claims of mental or emotional injury. *See Thompson v. Carter,* 284 F.3d 411, 417 (2d Cir.2002). The *Thompson* decision also made clear that § 1997e(e) does not restrict a plaintiff's ability to recover nominal or punitive damages, injunctive relief, or declaratory relief. *Id* . at 416.

Hutt's complaint does not allege specific physical injuries, although his prayer for relief does cite both physical and emotional harm. (Paper 26 at 11–12). Without an Eighth Amendment claim, however, his only claim is for a due process violation—a claim that, by its nature, does not inflict physical injury. Accordingly, Hutt cannot seek compensatory damages for his Fourteenth Amendment due process claim. *See, e.g., Rivera v. Wohlrab,* 2000 WL 1300403, at *1 (S.D.N.Y. Sept. 14, 2000). Any claims for nominal and punitive damages, however, may proceed.

### B. Declaratory Judgment

In addition to damages, the complaint seeks declaratory relief.[FN3] While the defendants concede that the PLRA does not bar such relief notwithstanding a lack of physical injury, they argue that the request is moot because Hutt is no longer incarcerated at the Southern State Correctional Facility. The docket indicates that Hutt is currently in prison at Lee Adjustment Center in Beattyville, Kentucky.

>    FN3. No injunctive relief has been requested.

A prisoner's transfer to a different correctional facility generally moots his request for declaratory and injunctive relief against employees of the transferor facility. *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006). The mootness doctrine will not apply, however, where a claim is "capable of repetition, yet evading review." *Murphy v. Hunt,* 455 U.S. 478, 482 (1982)). This exception requires at least the possibility that the "same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975).

**\*9** Here, Hutt a declaratory judgment would have no effect, as Hutt is no longer incarcerated at SSCF. *See Browning Debenture Holders' Comm. v. DASA Corp.,* 524 F.2d 811, 817 (2d Cir.1975) (where "the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed"). Although he has not argued against mootness, any claim of a future transfer back to SSCF, and subsequent placement in administrative segregation without adequate process, would be purely speculative. *See Preiser v. Newkirk,* 422 U.S. 395, 403 (1975); *Murphy v. Hunt,* 455 U.S. 478, 482–83 (1982); *Smith v. Dudley,* 190 F.3d 852, 855 (8th Cir.1995); *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir.1995). Consequently, his request for declaratory judgment should be DISMISSED as moot.

## VI. *Leave to Amend*

The Second Circuit has urged that "when addressing a *pro se* complaint, a district 'court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)); *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) ("sparse pleadings by a *pro se* litigant unfamiliar with the requirements of the legal system may be sufficient at least to permit the plaintiff to amend his complaint to state a cause of action"); Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

In this case, Hutt has failed to allege sufficient personal involvement on behalf of Hofmann and Ashburn. He has also failed to specify facts underlying his claims of physical harm. Furthermore, his failure to allege facts with regard to his conditions of confinement undermines his Eighth Amendment claim. As a result of these shortcomings, I am recommending dismissal of all claims against Hofmann and Ashburn, all claims for compensatory damages, and Hutt's Eighth Amendment claim.

Nonetheless, it is conceivable that re-pleading could give rise to valid claims on these points.FN4 Accordingly, limited leave to amend is GRANTED. If Hutt wishes to revive these claims by filing an amended complaint containing additional, well-founded and non-conclusory allegations, he may do so within 30 days of the Court's Order with respect to this Report and Recommendation.

> FN4. The same cannot be said for Hutt's official capacity claims for damages, or his request for declaratory relief.

### *Conclusion*

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 16) be GRANTED in part and DENIED in part. All claims for damages brought against the defendants in their official capacities should be DISMISSED with prejudice. Hutt's claim for declaratory judgment should be DISMISSED without prejudice as moot. Claims brought against defendants Hofmann and Ashburn in their individual capacities, Hutt's Eighth Amendment claim, and all claims for compensatory damages should be DISMISSED without prejudice as well, subject to re-pleading within 30 days of the Court's Order on this Report and Recommendation. Failure to file a timely amended complaint will result in the dismissal of those claims with prejudice.

D.Vt.,2009.
Hutt v. Hofman
Not Reported in F.Supp.2d, 2009 WL 2601927 (D.Vt.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2601927 (D.Vt.)
**(Cite as: 2009 WL 2601927 (D.Vt.))**

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 276913 (S.D.N.Y.)
**(Cite as: 1992 WL 276913 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Thomas MORAN and Ron Cirignano, Plaintiffs,
v.
Joseph FLAHERTY, individually and as President
of Local 1–2, Utility Workers Union of America,
JOHN WALSH, and LOCAL 1–2, UTILITY
WORKERS UNION OF AMERICA, Defendants.

No. 92 Civ. 3200 (PKL).
Sept. 25, 1992.

MEMORANDUM ORDER

LEISURE, District Judge,

**\*1** This Court referred this action to United
States Magistrate Judge Kathleen A. Roberts for
general pretrial supervision, including supervision
of discovery and resolution of nondispositive mo-
tions on August 7, 1992. On September 9, 1992,
Judge Roberts issued an Order denying defendants'
request to stay discovery pending the resolution of
defendants' motion to dismiss plaintiffs' claims pur-
suant to Fed.R.Civ.P. 12(b)(6), which is now
pending before this Court. Judge Roberts' Order
was subsequently amended by Order dated Septem-
ber 14, 1992. On September 23, 1992, this Court
temporarily stayed discovery to permit defendants
to file objections to Judge Roberts' Order. Defend-
ants' objections and plaintiffs' opposition to those
objections were received on September 24, 1992.
For the reasons stated below, defendants' objections
are overruled and Judge Roberts' Order is affirmed
in whole.

When considering objections to an order issued
by a magistrate judge concerning a nondispositive
matter, the Court "shall modify or set aside any
portion of the magistrate judge's order found to be
clearly erroneous or contrary to law." Fed.R.Civ.P.
72(a). "Matters concerning discovery generally are
considered 'nondispositive' of the litigation."
*Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d
522, 525 (2d Cir.), *cert. denied,* 111 S.Ct. 132
(1990); 12 Wright, Miller & Elliot, Federal Practice
& Procedure § 3076.5 (Supp.1992).

An order is clearly erroneous when " 'the re-
viewing court on the entire record is left with the
definite and firm conviction that a mistake has been
committed.' " *Nikkal Indus., Ltd. v. Salton, Inc.,*
689 F.Supp. 187, 189 (S.D.N.Y.1988) (quoting *Ag-
ricultural Servs. Ass'n v. Ferry–Morse Seed Co.,*
551 F.2d 1057, 1071 (6th Cir.1977)). Further, a ma-
gistrate judge's resolution of a discovery dispute de-
serves substantial deference. *See Thomas v. Hoff-
man–La Roche, Inc.,* 126 F.R.D. 522, 524
(N.D.Miss.1989) (citing *Merritt v. International
Bro. of Boilermakers,* 649 F.2d 1013, 1017 (5th
Cir.1981)); *Nikkal Indus., supra,* 689 F.Supp. at
189 ("a magistrate's report resolving a discovery
discourse between litigants should be afforded sub-
stantial deference and be overturned only if found
to be an abuse of discretion.").

Addressing the appropriateness of a denial of a
stay of discovery pending the resolution of a mo-
tion to dismiss, this Court does not find Judge
Roberts' decision to be clearly erroneous. While it
is clear that Fed.R.Civ.P. 26(c) provides authority
for the Court to issue a stay of discovery pending
the resolution of dispositive motions, *see, e.g.,*
*Transunion Corp. v. PepsiCo, Inc.,* 811 F.2d 127,
130 (2d Cir.1987), the issuance of a stay is not
mandated by rule or decision. Rather, as noted by
the Honorable Lawrence M. McKenna, United
States District Judge, Southern District of New
York, discovery should not be routinely stayed
simply on the basis that a motion to dismiss has
been filed. *In re Chase Manhattan Corp. Secur. Lit-
igation,* 1991 WL 79432, *1, 1991 U.S. Dist. LEX-
IS 6136, *1 (S.D.N.Y. May 7, 1991). Judge McK-
enna noted that the drafters of the Federal Rules of
Civil Procedure, had they contemplated an automat-
ic stay upon the filing of a motion to dismiss,
would have so provided. In deciding whether a stay
should issue, a court must consider the stage of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

litigation, the type of motion currently pending, and other case-specific factors in determining whether to grant a stay. *See Hachette Distribution, Inc. v. Hudson County News Co.,* 136 F.R.D. 356, 358 (E.D.N.Y.1991).

**\*2** In *In re Chase Manhattan Corp. Securities Litigation,* Judge McKenna denied defendants' motion to stay discovery pending the resolution of a motion to dismiss. Judge McKenna noted that even if a dismissal was granted, plaintiffs might thereafter successfully amend their complaint. Allowing discovery to go forward could move the action along toward a speedier resolution:

> Should the complaint (or an amended complaint) be sustained ..., commencement of the discovery process, while no doubt imposing some burden on defendants, will advance the ultimate disposition of this action.

1991 WL 79432, *1, 1991 U.S. Dist. LEXIS 6136, *2.

In the case presented to this Court, plaintiffs' have in fact already indicated an intention to file a motion to amend the Complaint. *See* Letter of Arthur Z. Schwartz, Esq., dated September 22, 1992. It is therefore possible, if not likely, that plaintiffs will succeed in correcting any procedural defects that might otherwise support defendants' motion to dismiss. Mindful of the procedural posture of this motion, this Court cannot find that the Order of Judge Roberts was clearly erroneous. Judge Roberts' Order denying a stay of discovery is supported by law and is appropriate under the particular facts of this case.

## CONCLUSION

For all the foregoing reasons, defendants' objections are overruled and the Order of United States Magistrate Judge Kathleen Roberts, dated September 9, 1992, as amended by Order dated September 14, 1992, is affirmed in whole. This Court further directs that defendants shall comply with the document production requirements of

Judge Roberts' Order by October 5, 1992, and that depositions shall be scheduled, at the mutual convenience of the parties, in an expeditious manner.

SO ORDERED.

S.D.N.Y.,1992.
Moran v. Flaherty
Not Reported in F.Supp., 1992 WL 276913 (S.D.N.Y.)

END OF DOCUMENT

Not Reported in F.Supp., 1996 WL 101277 (S.D.N.Y.)
**(Cite as: 1996 WL 101277 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
ANTI-MONOPOLY, INC., Plaintiff,
v.
HASBRO, INC., Defendant.

No. 94Civ.2120(LMM)(AJP).
March 7, 1996.

Carl E. Person, New York City, for Anti-Monopoly, Inc.

David Berger, Palo Alto, CA, Neil R. Stoll, New York City, for Kmart Corp.

OPINION AND ORDER

PECK, United States Magistrate Judge:

**\*1** In this antitrust action by Anti-Monopoly, Inc. against major game manufacturer Hasbro, Inc. (the manufacturer of, among other games, "Monopoly"), defendant Hasbro seeks a stay of discovery relating to plaintiff's "secondary-line" Robinson-Patman Act claims until Judge McKenna rules on Hasbro's recently filed motion for judgment on the pleadings on those claims for plaintiff's lack of antitrust standing. For the reasons set forth below, Hasbro's pending motion for judgment on the pleadings provides "good cause" for the stay of discovery, which is granted.

FACTS

*Anti-Monopoly's Complaint*

Anti-Monopoly's amended complaint (hereafter, "complaint") is summarized in Judge McKenna's prior Opinion granting in part defendants' motion to dismiss the complaint, familiarity with which is assumed. *Anti-Monopoly, Inc. v. Hasbro, Inc.,* 94 Civ. 2120, 1995 WL 380300 (S.D.N.Y. June 27, 1995). Plaintiff Anti-Monopoly, which possesses less than 1% of the market for family board games, developed and marketed a family board game called "Anti-Monopoly." *Id.* at

\*1. Defendant Hasbro is the leading manufacturer of family board games with more than 80% of the market. *Id.* The complaint also named retailers Toys "R" Us and K-Mart as defendants, *id.,* but plaintiff has subsequently settled with both of them. (*See* Declaration of Marthe Larosiliere, dated February 22, 1996 [hereafter "Larosiliere Dec."], Exs. A(3)-(4).)

After Judge McKenna's June 1995 decision, the following claims survived against Hasbro: (1) Count I -- violation of § 2 of the Sherman Act "by monopolizing, wilfully attempting to monopolize, and combining and conspiring to monopolize, the manufacturing and sale of family board games" (1996 WL 380300 at \*4-5;) (2) Count III -- tortious interference with advantageous business relationships under New York law (*id.* at \*6-7); (3) Count VI -- Hasbro's violation of § 7 of the Clayton Act by acquiring competitors where the effect has been to substantially lessen competition and to create a monopoly (*id.* at \*8); (4) Count VII -- violation of the Robinson-Patman Act (§ 2 of the Clayton Act) by "'providing substantial discounts, terms and services to major family board game retailers which are not made available on equal terms to competing smaller family board game retailers and wholesalers and which are not either cost justified or otherwise permitted under § 2."' (*id.* at \*8, quoting complaint; *see also id.* at \*9; (5) Count VIII -- violation of § 1 of the Sherman Act through illegal contracts, conspiracies and combinations to restrain trade (*id.* at \*9-10); and (6) Count IX -- violation of § 3 of the Clayton Act by selling to K-Mart, Toys "R" Us and others on terms which require them not to buy from Anti-Monopoly and other small competitors (*id.* at \*3).

This motion relates to Count VII of the complaint, plaintiff's Robinson-Patman Act claims for price discrimination. *See id.* at \*8-9. Plaintiff has alleged both a primary-line and secondary-line Robinson-Patman Act claim. Finding that the amended complaint alleged that Hasbro "prices its

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 101277 (S.D.N.Y.)
**(Cite as: 1996 WL 101277 (S.D.N.Y.))**

products below an appropriate measure of its costs," as required by the case law under the Robinson-Patman Act, the Court upheld the claim. *Id.* at *9. The Court noted, however, that "[b]ecause the Court agrees that Anti-Monopoly has stated a claim for primary-line injury, the Court does not address at this time Anti-Monopoly's claim that it has suffered a secondary-line injury." *Id.*

**\*2** Hasbro has now moved before Judge McKenna to dismiss plaintiff's secondary-line Robinson-Patman Act claim for lack of standing. That motion, which is pending, provides the linchpin for Hasbro's motion to stay discovery.

Because the difference between primary and secondary-line injury is the key to these motions, I quote Judge McKenna's explanation of primary and secondary-line cases:

> Two classes of plaintiffs are recognized to have standing to bring a Robinson-Patman claim. Direct competitors of the predator are said to suffer primary-line injury when they are unable to match the predator's prices and must either sell at a loss or lose market share. Competitors of the favored purchasers are said to suffer secondary-line injuries when they are forced to compete in the same market as the purchasers who are enjoying the benefit of lower overhead for the same product. Anti-Monopoly has argued that it has suffered both types of injuries.

*Id.* at *9.

*Anti-Monopoly's Discovery Requests*

After the initial pretrial conference on August 9, 1995, by Order dated August 16, 1995, the Court set a cutoff date of March 15, 1996 for fact discovery and May 10, 1996 for expert discovery. The Court notes that the parties had proposed, and the Court rejected, a much more leisurely schedule -- fact discovery through September 1996 and expert discovery through March 30, 1997. (*See* 8/9/95 "Proposed Joint Discovery Plan.")

In late December 1995, plaintiff served Requests to Admit and a Second Set of Interrogatories on defendant Hasbro, seeking discovery in support of plaintiff's secondary-line Robinson-Patman Act claim. (Larosiliere Dec. Exs. F-G.) In late January, plaintiff served a Second Set of Requests to Admit, containing requests 201-431, all of which appear directed at the secondary-line claim. (*Id.* Ex. I.) That same day, plaintiff served its Second Request for Production of Documents, including 12 requests directed at plaintiff's secondary-line claim. (*Id.* Ex. J.)

*ANALYSIS*

Pursuant to Rule 26(c), it is clear that the Court has the discretion to stay discovery for "good cause," and that good cause may be shown where a party has filed (or sought leave to file) a dispositive motion such as a motion to dismiss. This is especially so where the stay is for a "short" period of time and the opposing party (here, plaintiff) will not be prejudiced by the stay. *See, e.g., In re Towers Financial Corp. Noteholders Litigation,* 93 Civ. 0810, —— WL ———— (S.D.N.Y. Jan. 29, 1996) (Peck, M.J.); *American Booksellers Assoc., Inc. v. Houghton Miflin Co.,* 94 Civ. 8566, 1995 WL 72376 at *1 (S.D.N.Y. Feb. 22, 1995); *Gandler v. Nazarov,* 94 Civ. 2272, 1994 WL 702004 at *4 (S.D.N.Y. Dec. 14, 1994); *Chrysler Corp. v. Century Power Corp.,* 137 F.R.D. 209, 211 (S.D.N.Y. 1991); 2 M. Silberberg, *Civil Practice in the Southern District of New York* § 24.04 at 24-8 (and cases cited therein) (1995).

*The Breadth and Burden of the Requested Discovery*

**\*3** Two related factors that the courts consider in deciding a motion for a stay of discovery are the breadth of the discovery sought and the burden of responding to it. *E.g., American Booksellers v. Houghton Miflin,* 1995 WL 72376 at *1; *Chrysler v. Century,* 137 F.R.D. at 211. Here, plaintiff's secondary-line discovery requests are quite extensive. They involve almost 300 Requests to Admit, as well as 14 interrogatories and 12 document re-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

quests. (*See* Hasbro's Brief at 4-5 & nn.7-8, 10; *see also* Berger 2/29/96 Letter to the Court at 1-2.) These requests will be totally unnecessary if Hasbro's motion for judgment on the pleadings as to the secondary-line Robinson-Patman Act claim is granted. (The Court is relying on Hasbro's assertion that these requests only relate to the secondary-line claim, which has not been challenged by plaintiff.)

*There Is No Prejudice to Plaintiff from a Stay of Discovery*

Another factor that the courts consider is whether the party opposing the stay would be unfairly prejudiced by a stay. *E.g., Gandler v. Nazarov,* 1994 WL 702004 at *4; *Chrysler v. Century,* 137 F.R.D. at 211.

Plaintiff will not be prejudiced by a stay here. Plaintiff argues that "The requested stay would destroy the accelerated time schedule for discovery under which the parties and the Court have been working, and almost reached." (Person 2/26/96 Letter to the Court, at 1.) It is true that fact discovery is scheduled to be completed by March 15, 1996. The Court notes, however, that the parties originally proposed that fact discovery run through September 1996 (and expert discovery through March 30, 1997.) The deadlines were accelerated only because this Court believes in running a "rocket docket" and suggested that the parties could condense and expedite their discovery schedule, to which they agreed. The Court has every reason to believe that Hasbro's motion will be decided, and if it is denied that the additional fact and expert discovery needed will be conducted, before the original March 30, 1997 cutoff date.

Plaintiff's second prejudice argument is that:

Plaintiff cannot afford to call witnesses for some of the needed discovery, and then have to go through the process again for the Robinson-Patman type discovery, if a stay is granted. This means additional preparation time, additional travel time to and from the depositions, and other problems associated with bifurcated discovery especially of third-party witnesses, including re-noticing them at this late date in discovery.

(Person 2/26/96 Letter at 1.) However, as of this date, less than two weeks before the scheduled March 15, 1996 close of fact discovery, plaintiff has noticed only three depositions of senior Hasbro executives (Messrs. Hassenfeld, Dittomassi and Wilson), and no non-party depositions. (*See* Berger 2/29/96 Letter to the Court at 3.) Further, Hasbro contends that these three senior executives do not "have specific or detailed knowledge of pricing issues." (*Id.*) Thus, according to Hasbro, if their motion for judgment on the pleadings is denied, no depositions would be repeated. (*Id.*) Even if Hasbro were incorrect and these three depositions would need to be reopened, any extra cost to plaintiff is more than outweighed by the expense to Hasbro (and to plaintiff) of conducting discovery on a claim that may be dismissed as legally insufficient. Moreover, the "additional travel time to and from the depositions" is a factor that, if necessary, can be obviated in other ways later (*e.g.*, by agreement or order that the depositions occur in New York when the witness is in New York for business reasons, or permitting telephonic depositions, etc.). It is premature to decide what cost protection, if any, plaintiff will be given later. But it is clear that there is no prejudice to plaintiff from the stay.

*Hasbro's Motion For Judgment on the Pleadings has "Substantial Grounds"*

**\*4** The third and final factor the courts examine is the strength of the dispositive motion that is the basis for the discovery stay application. *E.g., Gandler v. Nazarov,* 1994 WL 702004 at *4 (stay granted where motion to dismiss "is potentially dispositive, and *appears to be not unfounded in the law*") (emphasis added); *Chrysler v. Century,* 137 F.R.D. at 211 (motions to dismiss "*appear to have substantial grounds*") (emphasis added).

From the Court's preliminary look at Hasbro's motion for judgment on the pleadings, the motion is "not unfounded in the law" and "appears to have substantial grounds."

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Plaintiff's secondary-line standing argument appears to be that Hasbro's price discrimination has put small retailers out of business, and that plaintiff sold or would have sold its game to these retailers if they had not gone out of business. (*See* Larosiliere Dec. Ex. D: Plf's 1994 Brief Opposing Motion to Dismiss, at 16.) In *G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762 (2d Cir.), *cert. denied,* 116 S. Ct. 381 (1995), the Second Circuit dismissed a similar Robinson-Patman Act claim for lack of standing, holding:

It follows naturally that a party in a business relationship with an entity that failed as a result of an antitrust violation has not suffered the antitrust injury necessary for antitrust standing....

Although the [plaintiff] distributors undoubtedly suffered injury as a result of the alleged antitrust violation, the injury suffered by the distributors is derivative of the injury suffered by Seven-Up Brooklyn. Thus, ... it was not the distributors that suffered direct antitrust injury, but Seven-Up Brooklyn. Therefore, the proper party to bring the antitrust action on these facts was Seven-Up Brooklyn....

55 F.3d at 766-67. Hasbro argues that the party suffering direct antitrust injury here, and thus the party with standing, are the small retailers allegedly forced out of business by Hasbro's price discrimination, and any injury suffered by plaintiff is derivative and not antitrust injury.

Hasbro also cites two district court decisions that held that a competing manufacturer (like plaintiff here) has no antitrust standing to bring a secondary-line claim under Sections 2(d) and 2(e) of the Robinson-Patman Act for a competitor's providing discriminatory allowances or services to customers. *Ashkanazy v. I. Rokeach & Sons, Inc.,* 757 F. Supp. 1527, 1553-54 (N.D. Ill. 1991); *Frito-Lay, Inc. v. Bachman Co.,* 659 F. Supp. 1129, 1140-41 (S.D.N.Y. 1986).

Plaintiff distinguishes these cases and relies on certain "target area" cases. (*See* Larosiliere Dec. Ex. D: Plf's 1994 Brief at 16-19.) The Court need not decide whether Anti-Monopoly or Hasbro is correct -- that motion is before Judge McKenna. The Court's reading of the parties' prior briefs on this issue, and the cases cited above, however, makes clear that not only does Hasbro's motion to dismiss "appear not unfounded on the law" but indeed it "appears to have substantial grounds."

## CONCLUSION

**\*5** All of the factors relied on by the courts support a stay of discovery. Accordingly, for the reasons set forth above, the Court grants Hasbro's motion to stay fact and expert discovery that relates solely to plaintiff's secondary-line Robinson-Patman Act claim. The stay will be lifted without further Court order if Judge McKenna denies Hasbro's motion for judgment on the pleadings as to the secondary-line claim.

SO ORDERED.

S.D.N.Y.,1996.
Anti-Monopoly, Inc. v. Hasbro, Inc.
Not Reported in F.Supp., 1996 WL 101277 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.